IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WADADUYA EL-BEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 23-652 |
| | : | |
| v. | : | |
| | : | |
| ALLENTOWN POLICE DEPARTMENT; | : | |
| OFFICER BENNER, BADGE #1; | : | |
| OFFICER FINN, BADGE #260; OFFICER | : | |
| SINTON, BADGE #49; CITY OF | : | |
| ALLENTOWN MAYOR, MATTHEW | : | |
| TUERK; CITY OF ALLENTOWN | : | |
| SOLICITOR, MATTHEW J. KLOIBER; | : | |
| and CITY OF ALLENTOWN CHIEF OF | : | |
| POLICE, CHARLES ROCA, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                    May 22, 2023

The *pro se* plaintiff has sought leave to proceed *in forma pauperis* in this civil action against

a city's police department, its chief of police, the city's solicitor, the city's mayor, and three city

police officers, arising out of the officers' alleged unlawful search and seizure and their other

interactions with him after responding to a harassment complaint seeking to have him removed

from his residence. For his causes of action, the plaintiff asserts claims under 42 U.S.C. § 1983 for

(1) illegal search and seizure in violation of the Fourth Amendment, (2) false arrest in violation of

the Fourth Amendment, (3) denial of his rights to equal protection and due process in violation of

the Fourteenth Amendment, and (4) supervisory liability against the chief of police, city solicitor,

and mayor. The plaintiff also asserts a violation of a federal criminal statute, 18 U.S.C. § 242, and

a state-law assault tort claim. His requests for relief include a claim for monetary damages and

demands that the court terminate the officers' employment with the city, arrest them, and direct that they surrender their pensions and any other public funding they receive.

After reviewing the *in forma pauperis* application and screening the complaint under 28 U.S.C. § 1915(e)(2), the court will grant the plaintiff leave to proceed *in forma pauperis*, dismiss all claims asserted in the complaint, and strike with prejudice his demands for injunctive relief concerning the officers. Concerning these demands for injunctive relief, the court is striking them because the court has no authority to direct the city to fire the officers, arrest them, or order the forfeiture of their pensions as relief in this civil case. In addition, the plaintiff lacks a cognizable right to compel the criminal prosecution of another. Regarding the dismissed claims, the court will (1) dismiss with prejudice the plaintiff's claim under 18 U.S.C. § 242 because there is no civil remedy for a violation of this federal criminal statute; (2) dismiss with prejudice the plaintiff's claims against the police department because it is not a proper defendant under 42 U.S.C. § 1983; (3) dismiss all other claims in the complaint without prejudice to the plaintiff filing an amended complaint should he be able to remedy the defects in those claims identified in this memorandum opinion; and (4) dismiss the state-law assault claim because there are no viable federal claims at this time, the court declines to exercise supplemental jurisdiction over this claim, and the court otherwise lacks subject-matter jurisdiction over the claim because the parties are not completely diverse for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

## I.  ALLEGATIONS AND PROCEDURAL HISTORY

On February 16, 2023, the *pro se* plaintiff, Wadaduya El-Bey ("El-Bey"), commenced this action by filing an application for leave to proceed *in forma pauperis* ("IFP Application") and a complaint. *See* Doc. Nos. 1, 2. In the complaint, El-Bey asserts claims under 42 U.S.C. § 1983 for alleged constitutional violations by the Allentown Police Department ("APD") and three APD

Officers: David Benner, Marissa Finn, and Adam Sinton.[1] *See* Compl. at ECF pp. 2, 3, Doc. No. 2.

El-Bey alleges that on September 30, 2022, between 8:30 and 10:30 p.m., the Officers responded to a "'Harassment by Annoyance' complaint" against him, where the complainant wanted him removed from the property where he was residing at the time. *See id.* at ECF p. 3. When they arrived, the officers surrounded El-Bey, shined a bright light in his face while he was sitting on the patio, treated him "as a criminal," "plac[ed] him under threat[, and] intimidate[ed] [him]." *Id.* Based on these allegations, El-Bey expressly asserts that the Officers and the APD (1) deprived him of his equal protection and due process rights under the Fourteenth Amendment and (2) subjected him to an illegal search and seizure in violation of the Fourth Amendment. *See id.* at ECF pp. 2, 4. He also alleges a claim for a violation of 18 U.S.C. § 242 and a state-law assault tort claim against the Officers. *See id.* at ECF p. 2. He states that he suffered emotional distress from the defendants' actions. *See id.* at ECF p. 5. For relief, he seeks (1) $1.4 million in damages, (2) an order terminating the employment of the Officers and requiring them to surrender their pensions or any other public money they receive, (3) an order requiring the APD to train its officers, so they cease violating federal, state, and local laws, and (4) the imposition of a $10,000 fine against each of the Officers. *See id.* at ECF p. 4.

On February 21, 2023, El-Bey filed a copy of a letter that he appears to have sent to the Allentown City Solicitor, Matthew J. Kloiber ("Solicitor Kloiber"), where he requested to meet with him so they could discuss El-Bey's "grievance with the [APD]." Feb. 21, 2023 Ltr. at ECF p. 1, Doc. No. 3. Two days later, El-Bey filed another letter titled, "Notice of Civil Action Adjustment" (the "Notice"), where he "inform[ed] the APD and municipal corporation of

---

[1] Hereinafter, the court will collectively refer to Officers Benner, Finn, and Sinton as the "Officers."

Allentown, PA, of [his] intent to file [a] motion to adjust the defendants on [sic] my case." Feb. 23, 2023 Ltr. at ECF p. 1, Doc. No. 5. Regarding these additional defendants, El-Bey claims that he intends to sue Solicitor Kloiber, Matthew Tuerk, the Mayor of Allentown ("Mayor Tuerk"), and Charles Roca, the Chief of the APD ("Chief Roca"), in their supervisory capacities. *See id.*

El-Bey also includes additional claims in this letter. He avers that he "will be pursuing the maximum sentence available under [18 U.S.C. § 242]," and "additional sentencing of life in prison" for the Officers. *Id.* El-Bey then asserts that he is looking for an officer who enforced an "unlawful [Protection from Abuse order]" against him[2] and, once he obtains the name of that officer, he will be increasing his request for compensatory damages from $1.4 million to $4.5 million. *Id.* El-Bey also states that he "will be investigating the city code/laws which violate the supreme law and will add them to [his] case increasing [his] claim by [$1 million] per violation, [i]ncluding, but not limited to, your infringement upon the right to bare [sic] arms." *Id.*

## II.    DISCUSSION

### A.    The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation.

---

[2] El-Bey appears to acknowledge that he is/was known as Eric S. Baker, Jr. *See* Feb. 23, 2023 order at ECF p. 1; *see also* Doc. No. 2-1 (attaching "Appellation and Nationality Affidavit" stating his name was Eric Scott Baker, Jr. and indicating that he is now member of Mu'urish nation).

> *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, §
> 1915(a) allows a litigant to commence a civil or criminal action in federal court in
> [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things,
> that he is unable to pay the costs of the lawsuit. *Neitzke*, 490 U.S. at 324, 109 S.Ct.
> 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote

omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable

to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir.

1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the

litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this

Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must]

review the affiant's financial statement, and, if convinced that he or she is unable to pay the court

costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at

1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that El-Bey is unable to prepay the

fees to commence this civil action. Therefore, the court will grant him leave to proceed *in forma

pauperis*.

**B.      Standard of Review for Screening Complaints Under 28 U.S.C. § 1915 and Sua
Sponte Review for Subject-Matter Jurisdiction**

Because the court has granted El-Bey leave to proceed *in forma pauperis*, the court must

engage in the second part of the two-part analysis and examine whether the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a

defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that

"[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is

frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask

only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

The court also has the authority to examine subject-matter jurisdiction sua sponte. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte"). The party commencing the action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

### C.      Analysis

In addressing El-Bey's claims at this screening stage, the court will first address the Notice and its relationship to the complaint. The court will then analyze and address the merits of El-Bey's claims.

### 1.      The Notice

As indicated above, El-Bey indicates in the Notice that he will seek to add supervisory liability claims against three defendants, Mayor Tuerk, Solicitor Kloiber, and Chief Roca, to his complaint. *See* Feb. 23, 2023 Ltr. at ECF p. 1. El-Bey also included additional requests for relief in the Notice. *See id.* Combined, the intent to add additional defendants and additional claims for relief could be construed as El-Bey's attempt to amend his complaint.

In general, an amended complaint, once submitted to the court, serves as the governing pleading in the case because an amended complaint supersedes the prior complaint. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint . . . superseded his initial complaint." (citing *W. Run Student Hous. Assocs., LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013))); *see Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)), *cert. denied*, 140 S. Ct. 1611 (2020); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (per curiam) (explaining that "liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings").

Moreover, the Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Bryant v. Raddad*,

Civ. A. No. 21-CV-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, Civ. A. No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011))); *Brooks-Ngwenya v. Bart Peterson's The Mind Trust*, No. 16-cv-193, 2017 WL 65310, at *1 (N.D. Ill. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent . . . .").

Here, the Notice includes few facts, and merely advances legal assertions and requests for relief. As such, if the court were to deem it as an amended complaint, the court would be compelled to dismiss it. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (explaining that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Further, it is unlikely that El-Bey understood the consequences of seeking to amend his complaint in this matter. Therefore, in the interest of judicial economy, the court will construe the Notice as a supplement rather than as an amended complaint, and the court will screen both the complaint and the Notice together.

### 2.    Attempt to Assert a Civil Cause of Action for a Violation of 18 U.S.C. § 242

In the complaint and the Notice, El-Bey purports to assert a civil claim against the defendants under 18 U.S.C. § 242. This is a federal criminal statute which, along with 18 U.S.C. §§ 241, 245, establish criminal liability for certain deprivations of civil rights and conspiring to deprive civil rights. El-Bey may not assert a claim for a violation of section 242 in this civil case because there is no private right of action under the federal criminal statutes. *See Davis v. Warden Lewisburg USP*, 594 F. App'x 60, 61 n.3 (3d Cir. 2015) (per curiam) (explaining that plaintiff's

claim for alleged violation of his civil rights under 18 U.S.C. § 242 was "meritless because § 242 is a criminal statute, through which no private cause of action is created"); *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001) ("[T]he Court deems the Plaintiff's claim for relief pursuant to 18 U.S.C. §§ 241-242 unmeritorious because those statutes do not create a civil cause of action enforceable by the Plaintiff." (citation omitted)); *see also Stern v. Halligan*, 158 F.3d 729, 731 n.1 (3d Cir. 1998) (pointing out that the district court correctly "granted summary judgment on the 18 U.S.C. § 241 claim because there is no private cause of action under the criminal statute" (citing *Newcomb v. Ingle*, 827 F.2d 675, 677 n.1 (10th Cir. 1987))). Accordingly, the court will dismiss with prejudice El-Bey's claim for a violation of 18 U.S.C. § 242.

### 3. Request for an Order Terminating the Officers' Employment

In the complaint, El-Bey requests that the court order the termination of the Officers' employment with the APD. This court is not empowered to order termination of these officers as a remedy under section 1983. *See Buskirk v. Pa. Bd. of Prob. and Parole*, Civ. A. No. 22-1826, 2022 WL 4542094, at *2 n.4 (E.D. Pa. Sept. 28, 2022) (pointing out that "the Court has no authority to terminate the employment of a state employee" (citation omitted)); *Teal v. Moody*, No. 15-1402, 2019 WL 6702405, at *1 (M.D. Fla. July 10, 2019) ("[T]o the extent Teal suggests that this Court reprimand the Defendants and/or terminate their employment, this Court does not have the authority to reprimand state employees and/or terminate their employment."); *Theriot v. Woods*, No. 09-199, 2010 WL 623684, at *4-5 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in form of ordering firing of defendants is "frivolous," "entirely improper," and "not available under 42 U.S.C. § 1983" and that court "has no authority under 42 U.S.C. § 1983

to . . . terminate the employment of [the defendants]"). Therefore, the court will strike with prejudice El-Bey's request that the court enter an order terminating the officers' employment.[3]

### 4.      Request that the Court Imprison the Officers

In the Notice, El-Bey indicates that he will seek to have the Officers imprisoned for life because of what they allegedly did to him. *See* Feb. 23, 2023 Ltr. at ECF p. 1. This form of relief is unavailable in this civil action, as "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (reinforcing prior decisions "hold[ing] that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" and explaining that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another" (citations omitted)); *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (per curiam) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution." (citations omitted)); *Smith v. Friel*, No. 19-CV-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019) (collecting cases and pointing out that "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties, finding that civil plaintiffs lack standing to make such claims and concluding that such relief simply is unavailable in a civil lawsuit"), *report and recommendation adopted*, 2019 WL 2003380 (M.D. Pa. July 10, 2019). Accordingly, the court will strike with prejudice El-Bey's request for relief to have the court imprison the Officers for life.

---

[3] For the same reason, the court will strike with prejudice El-Bey's request that the court direct the Officers to surrender their pensions or other public funding they received.

### 5.       Claims Against the APD

El-Bey has asserted a claim for money damages against the APD based on the Officers'
allegedly unconstitutional interactions with him on September 30, 2022. The vehicle for El-Bey to
seek relief against the APD (and the Officers) in this case is 42 U.S.C. § 1983. This statute provides
in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege
and prove that a "person" deprived the plaintiff of a constitutional right while acting under color
of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff
must allege the violation of a right secured by the Constitution and laws of the United States, and
must show that the alleged deprivation was committed by a person acting under color of state
law.").

Here, El-Bey's section 1983 claim against the APD is implausible. The APD is not a
"person" that can be sued under section 1983. *See Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d
Cir. 2016) (per curiam) (concluding that district court "correctly determined that the Jersey City
Police Department was not a proper party to this action" and explaining that "[a]lthough local
governmental units may constitute 'persons' against whom suit may be lodged under § 1983, a
city police department is a governmental sub-unit that is not distinct from the municipality of
which it is a part"). Instead, the proper defendant for a claim against the APD is the municipality
itself, namely, the City of Allentown. *See, e.g.*, *Cohen v. Chester Cnty. Dep't of Mental
Health/Intellectual Disability Servs.*, Civ. A. No. 15-5285, 2016 WL 3031719, at *4 (E.D. Pa. May

24, 2016) (explaining that as municipal agencies are not proper defendants under section 1983, "the municipality is the proper defendant [in] § 1983 claims arising from the agency's actions"). Since El-Bey may not proceed on his section 1983 claim against the APD insofar as it is not a proper defendant for such a claim, the court will dismiss with prejudice his section 1983 claim against the APD.[4]

---

[4] Even if the court were to construe El-Bey's claim as one against the City of Allentown, he has failed to state a claim against the City because nothing in the complaint suggests that any violation of his constitutional rights stemmed from a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). To state a plausible section 1983 municipal liability claim, El-Bey "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

    In addition,

    [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale*, 318 F.3d at 584 (alterations in original) (internal footnote omitted).

6.      **Possible Claims Against Solicitor Kloiber**

In the Notice, El-Bey indicates an intent to assert a possible claim against Solicitor Kloiber, seemingly because he is allegedly responsible for the Officers. *See* Feb. 23, 2023 Ltr. at ECF p. 1. Despite this apparent intent, El-Bey does not include any factual allegations describing Solicitor Kloiber's participation in the events giving rise to his claim. Due to this failure, El-Bey has not asserted a plausible section 1983 claim against Solicitor Kloiber because "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Additionally, El-Bey's conclusory and undeveloped allegations against Solicitor Kloiber do not state a plausible claim because they do not explain why Solicitor Kloiber should be treated as a state actor in this case. An attorney does not act under color of state law simply by virtue of acting as an attorney or solicitor on behalf of a municipal entity. *See, e.g.*, *Angelico v. Lehigh Valley Hosp.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." (citations omitted)); *Anderson v. Perhacs*, C.A. No. 11-289, 2013 WL 1336124, at *4 (W.D. Pa. Mar. 29, 2013) ("It is well-settled that an attorney does not act under color of state law simply by virtue of representing a state actor as a client or by acting as solicitor on behalf of a municipality or public school board." (citations omitted)); *Spradlin v. Borough of Danville*, No. 4:CV 02 2237,

14

2005 WL 3320788, at *3 (M.D. Pa. Dec. 7, 2005) (explaining that section 1983 "requires that [the plaintiff] show that the Solicitor Defendants acted under the color of state law and denied him a federally protected constitutional or statutory right" (citations omitted)). Nevertheless, an attorney may become a state actor in "three exceptional circumstances": "(1) by acting as a state official, (2) by conspiring with a state official to deprive a person of his or her constitutional rights, or (3) by engaging in some action that is by its nature, chargeable to the state." *Willis v. Carroll Twp.*, Civ. A. No. 07-949, 2008 WL 644762, at *5 (M.D. Pa. Mar. 5, 2008) (internal citations and quotation marks omitted).  In contrast, where the attorney is engaging in the rendering of advice to a municipal client, drafting legal documents, or otherwise engages in litigation or equivalent legal activities, he or she will generally not be subject to liability as a state actor. *See Angelico*, 184 F.3d at 277–78 (explaining circumstances in which attorney performing services is not deemed to be state actor); *Willis*, 2008 WL 644762, at *5–6 (determining that allegations did not state plausible claim that attorney acting as municipal solicitor was state actor when attorney's work was performed solely for benefit of municipal client). In short, "[w]hen a municipality's attorney goes beyond the traditional attorney-client relationship, [the attorney] may become a state actor." *Belkowski v. Kruczek*, No. 09-cv-1549, 2010 WL 1433099, at *3 (W.D. Pa. Apr. 7, 2010) (citing *Frompovicz v. Twp. of S. Mannheim*, No. 06cv2120, 2007 WL 2908292, at *8 (M.D. Pa. Oct. 4, 2007) (concluding that plaintiff stated viable section 1983 claim against attorney who went beyond making recommendations and decided official government policies); *see also Willis*, 2008 WL 644762, at *6 (characterizing *Frompovicz* as "holding that a township solicitor acted under color of state law when he exercised policy-making authority").

Here, El-Bey has not provided any factual allegations describing any conduct by Solicitor Kloiber that is related to the Officers' interactions with him. Without these allegations, or any

allegations explaining why Solicitor Kloiber should be treated as a state actor in this matter, El-Bey's claims against him are implausible and must be dismissed. However, the court will dismiss them without prejudice to El-Bey filing an amended complaint if he can assert the necessary allegations to state a plausible claim against Solicitor Kloiber.

### 7. Supervisory Liability Claims Against Mayor Tuerk, Solicitor Kloiber, and Chief Roca

El-Bey attempts to assert claims against Mayor Tuerk, Solicitor Kloiber, and Chief Roca because they are allegedly responsible for the acts of the Officers. However, he may not assert such claims based merely on allegations that these individuals supervised the Officers because liability under section 1983 cannot be predicated on a respondeat superior basis. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her § 1983 claims on a *respondeat superior* basis." (citing *Rode*, 845 F.2d at 1207)); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief. First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his § 1983 claims on a respondeat superior basis." (internal citations omitted)). Instead, if a section 1983 plaintiff seeks to hold a supervisor liable for the unconstitutional acts by subordinates, the plaintiff's allegations must satisfy one of these two theories of supervisory liability: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586

(3d Cir. 2004) (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).

Here, El-Bey fails to assert any factual allegations which would satisfy either method of attempting to establish supervisory liability. He does not allege that Mayor Tuerk, Solicitor Kloiber, or Chief Roca participated in violating his rights, directed the Officers to violate them, or had knowledge and acquiesced in the Officers' alleged violations. El-Bey also did not include factual allegations that would indicate that Mayor Tuerk, Solicitor Kloiber, or Chief Roca, with deliberate indifference to the consequences, established or maintained a practice, policy, or custom which violated his constitutional rights. As already mentioned, at best, El-Bey merely includes conclusory allegations that Mayor Tuerk, Solicitor Kloiber, and Chief Roca are liable because they supervised the Officers. This type of conclusory allegation of supervisory liability is insufficient to state a plausible claim for supervisory liability against Mayor Tuerk, Solicitor Kloiber, and Chief Roca. Accordingly, El-Bey has failed to state a plausible claim for supervisory liability under

section 1983 against Mayor Tuerk, Solicitor Kloiber, and Chief Roca,[5] and the court will dismiss

this claim without prejudice to him attempting to reassert such a claim in an amended complaint.[6]

### 8.    Fourth Amendment Unlawful Search and Seizure Claims Against the Officers

El-Bey asserts a section 1983 claim against the Officers for unlawful search and seizure in

violation of his Fourth Amendment rights. *See* Compl. at ECF p. 3. The Fourth Amendment

provides:

> The right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and

---

[5] The court recognizes that "[u]nder section 1983, a supervisor may be liable for [their] failure to train or supervise employees where 'the failure amounts to "deliberate indifference" to the rights of persons with whom those employees will come into contact.'" *Whitfield v. City of Phila.*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). A claim for liability based on a failure to train requires a plaintiff to plead and prove four elements: (1) an existing policy that created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (identifying elements of claim). Ultimately, where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," and that failure to train "actually causes injury," a supervisor may be held liable. *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989).
In addition,

> [i]n resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training . . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id.* at 390–91 (internal citations omitted).
Like his non-failure-to-train supervisory liability claims, any failure-to-train claim fails because El-Bey has failed to allege that Mayor Tuerk, Solicitor Kloiber, or Chief Roca established a policy, practice, or custom that resulted in the Officers violating his constitutional rights. In addition, although El-Bey requests as relief that the APD be required to properly train its officers, *see* Compl. at ECF p. 5, other than broadly alleging that he believes officers are trained to treat complainants as innocent and "defendants" as guilty, *id.*, he does not allege that Mayor Tuerk, Solicitor Kloiber, or Chief Roca were aware of and indifferent to an existing policy that (1) created an unreasonable risk of constitutional injury and (2) resulted in injuries to him. Accordingly, El-Bey has also failed to plausibly allege a section 1983 claim for failure to train against Mayor Tuerk, Solicitor Kloiber, and Chief Roca.
[6] *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (concluding that PLRA "did not alter our preexisting rule that *in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) (explaining that "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile").

particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. As indicated by this language, "the underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985). Nevertheless, "what is reasonable depends on the context within which a search takes place." *Id.*

When a search occurs without a warrant, it is "presumptively unreasonable under the Fourth Amendment." *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) (citations omitted). On the other hand, where a search is made pursuant to a warrant, the Fourth Amendment requires that the warrant shall not issue unless it is based on probable cause, is supported by a sworn affidavit, and particularly describes both the place to be searched and the items to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (describing Fourth Amendment's requirements for issuance of search warrant); *see also United States v. Rankin*, 442 F. Supp. 2d 225, 229 (E.D. Pa. 2006) ("Pursuant to the Fourth Amendment, a valid warrant must describe the place to be searched and the items to be seized with particularity. A warrant is impermissibly overbroad if it authorizes 'a general, exploratory rummaging in a person's belongings.'" (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971))). Also, "the breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate." *United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006).

Here, El-Bey has limited the court's ability to review his illegal search and seizure claim because he has not included sufficient factual allegations surrounding the alleged illegal search and seizure. *See Medina v. Aprile*, Civ. A. No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) ("To properly analyze a claim asserting an illegal search and seizure under the Fourth

Amendment, [the plaintiff] must plead the circumstances under which the search arose." (citation

omitted)). For instance, El-Bey includes no allegations regarding whether the Officers searched

him pursuant to a search warrant or conducted a warrantless search. Instead, he merely alleges that

the Officers responded to a complaint lodged against him and, while investigating that complaint,

surrounded him on the patio of his residence and shined bright lights in his face. *See* Compl. at

ECF p. 4. There are no allegations that he was arrested or otherwise told that he was not free to

leave. *See Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 147 (3d Cir. 2005)

("A seizure occurs for Fourth Amendment purposes when 'a reasonable person would have

believed that he was not free to leave.'" (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573

(1988))); *see also United States v. De Castro*, 905 F.3d 676, 678–80 (3d Cir. 2018) ("An

investigative stop may constitute (or ripen into) a *de facto* arrest where the circumstances . . .

amount to a show of official authority such that a reasonable person would have believed he was

not free to leave." (citation and internal quotation marks omitted)). He does not describe how long

the encounter with the Officers lasted, allege that the officers searched the premises or his person,

or aver that the Officers seized any items from him or the premises. Absent these allegations, El-

Bey has not pleaded a plausible Fourth Amendment claim for an unlawful search and seizure.

Therefore, the court will dismiss this claim, but will do so without prejudice to El-Bey amending

this claim if he can do so.

### 9.     Fourteenth Amendment Due Process Claim Against the Officers

El-Bey asserts that the Officers violated his due process rights under the Fourteenth

Amendment. *See* Compl. at ECF p. 3. Pursuant to the Fourteenth Amendment's Due Process

Clause, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of

law." U.S. Const. amend. XIV, § 1. Under this clause, there are three "kinds of § 1983 claims that

may be brought against the State." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). First, a "plaintiff may bring suit under § 1983 for state officials' violation of [their] rights [as guaranteed by the Bill of Rights], *e.g.*, freedom of speech or freedom from unreasonable searches and seizures." *Id.* Second, "[a] § 1983 action may be brought for a violation of procedural due process," *i.e.*, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property,' . . . without due process of law." *Id.* Third, a plaintiff may assert a claim under the "substantive component" of the Due Process Clause, which "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

The procedural component of the Due Process Clause "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) [the plaintiff] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [the plaintiff] did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). As to the available procedures, due process "is a flexible concept that varies with the particular situation." *Zinermon*, 494 U.S. at 127; *see Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").

In this case, El-Bey avers only that the Officers responded to a complaint, surrounded him on his patio, and shined bright lights in his face. He does not identify any protected liberty or property interest of which he was deprived, and he does not allege that he was deprived of any

21

interest without adequate procedural protections.[7] His undeveloped and unsupported assertion of a due process violation does not state any kind of plausible claim; as such, the court will dismiss it without prejudice to El-Bey to potentially amend this claim.

### 10.     Fourteenth Amendment Equal Protection Claim Against the Officers

El-Bey also maintains that the Officers deprived him of his rights under the Equal Protection Clause of the Fourteenth Amendment. *See* Compl. at ECF p. 3. The Equal Protection Clause provides that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state a plausible equal protection claim under section 1983, a plaintiff must allege "that he was treated differently than other similarly situated [individuals], and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of N.Y.*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Here, El-Bey has not pleaded a plausible equal protection claim because he has not alleged that he is a member of a protected class or that he was treated differently from others similarly situated.[8] Accordingly, the court will dismiss this claim without prejudice to El-Bey attempting to replead it in an amended complaint.

---

[7] Although the court has referenced the possibility of a substantive due process claim, the court cannot liberally construe the complaint as containing any such claim.

[8] It is unclear from the complaint if El-Bey is attempting to assert a race-based equal protection claim. If he is, he had to allege that the Officers were motivated by racial animus. *See Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989) (explaining that, to plead race-based equal protection claim, "[a] plaintiff must sufficiently allege that defendants were motivated by racial animus"). El-Bey has not alleged that the Officers acted out of racial animus. Thus, he has not plausibly pleaded a race-based equal protection claim.

### 11. Possible Cause of Action for False Arrest Against the Officers

Although unclear, it is possible that El-Bey seeks to assert a section 1983 claim for false arrest against the Officers. To state a plausible section 1983 claim for false arrest, El-Bey must allege "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted).[9] Here, El-Bey has failed to state a plausible false arrest claim because he does not allege that the Officers arrested him.[10] The court will dismiss this claim and will provide El-Bey with leave to amend if he seeks to assert such a claim.

### 12. State-Law Assault Claim Against the Officers

El-Bey also posits a state-law assault claim against the Officers. Because the court has dismissed his federal claims, the court will not exercise supplemental jurisdiction over his state-law claim. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental

---

[9] "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citation omitted). The court uses a totality-of-the-circumstances approach to assess the reasonableness of the officer's conduct, and the court considers the officer's perspective at the time he or she acted. *Carswell v. Borough of Homestead*, 381 F.3d 235, 246 (3d Cir. 2004). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [the defendant's] knowledge and of which [he or she] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the plaintiff had violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

[10] The court reviewed the publicly available criminal docket records in attempting to determine whether criminal charges arose from El-Bey's interaction with the Officers. *See Castro-Mota v. Smithson*, Civ. A. No. 20-CV-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (explaining that district court may consider matters of public record, such as publicly available criminal dockets, "when . . . screening . . . a *pro se* complaint under [28 U.S.C.] § 1915" (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006))); *Wesley v. Varano*, Civ. A. No. 1:12-CV-1131, 2012 WL 2813827, at *1 (M.D. Pa. July 10, 2012) ("In disposing of a 12(b)(6) motion, in addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case; hence, a court also may consider these items in screening a complaint under the provisions of 28 U.S.C. § 1915." (citations omitted)); *Donahue v. Dauphin Cnty.*, Civ. A. No. 1:17-cv-1084, 2017 WL 3405112, at *1 n.1 (M.D. Pa. June 27, 2017) ("This publicly available state criminal docket, available online . . ., is a public record of which the Court may take judicial notice in considering dismissal for failure to state a claim." (citations omitted)); *Pearson v. Krasley*, Civ. A. No. 16-66, 2017 WL 2021061, at *1 (E.D. Pa. May 11, 2017) ("A court may also consider public records such as criminal dockets" when analyzing whether complaint fails to state claim for relief under Rule 12(b)(6)). The court could not locate any criminal case relating to the incident described in the complaint.

jurisdiction over a claim ... if-- ... (3) the district court has dismissed all claims over which it has original jurisdiction...."). As the Supreme Court instructs:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966). Here, the court finds no basis to retain supplemental jurisdiction over the remaining state-law claim.

Additionally, there is no independent basis for subject-matter jurisdiction over any state-law claims. The only possible basis is under the diversity jurisdiction statute, 28 U.S.C. § 1332, which grants a district court subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a). Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). "The burden of establishing federal jurisdiction rests with the party asserting its existence." *Id.* at 105 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

For purposes of determining whether parties are completely diverse, an individual is a citizen of the state where the individual is domiciled, meaning the state where the individual is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d

Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." (citation omitted)). El-Bey attests that he is homeless and provides the court with a Pennsylvania mailing address. *See* Appl. to Proceed in Dist. Ct. Without Prepaying Fees or Costs at 5, Doc. No. 1 ("I am currently homeless, unemployed. . . . Occassionally [sic], I stay at my mother's domicile."); *id.* (providing mailing address of 1748 S. Idaho St., Apt. 4, Allentown, PA 18103); Compl. at ECF p. 2 (listing same address as one provided with IFP Application). He does not identify the location of his domicile. He also does not allege the citizenship of the individual defendants; instead, he provides only business addresses for the individual officers. As such, he has not satisfied his burden to sufficiently allege that the parties are diverse for purposes of establishing the court's diversity jurisdiction over his state-law assault claim or any other possible state-law claim he intends to pursue. Accordingly, the court will dismiss without prejudice his state-law claims. If El-Bey can plausibly allege diversity of citizenship or a federal claim that would allow this court to exercise supplemental jurisdiction over any state-law claims, he may do so in an amended complaint, should he choose to file one.

## III.    CONCLUSION

For the reasons stated above, the court will grant the IFP Application, dismiss the complaint, and strike with prejudice El-Bey's claims for injunctive relief against the Officers. For the claims the court will dismiss, the court will dismiss with prejudice El-Bey's claims under 18 U.S.C. § 242 and his section 1983 claim against the APD. The court will dismiss the remainder of El-Bey's claims without prejudice to him filing an amended complaint should he desire to reassert such claims.

The court will enter a separate order.[11]

BY THE COURT:


/s/ *Edward G. Smith*____
EDWARD G. SMITH, J.

---

[11] This order will provide additional instruction for filing an amended complaint.